# Buchanan Ingersoll ♠ Rooney PC
Attorneys & Government Relations Professionals

**Stuart P. Slotnick**
212 440 4435
stuart.slotnick@bipc.com

620 Eighth Avenue, 23rd Floor
New York, New York 10018-1669
T 212 440 4400
F 212 440 4401
www.buchananingersoll.com

August 4, 2008

**VIA UPS OVERNIGHT MAIL & ECF**
The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
United States Courthouse
300 Quarropas Street., Room 533
White Plains, New York 10601

Re:   **United States *v.* Yehezkel Elia (07-CR-543)(KMK)**

Dear Judge Karas:

    We have been retained to represent Mr. Elia for the limited purpose of making a bail application, in conjunction with Mr. Elia's trial counsel, Jared J. Scharf, Esq. On July 2, 2008, after being convicted of various counts of income tax evasion pursuant to 26 U.S.C. §§ 7201, 7206(1) and conspiracy to defraud the United States in violation of 18 U.S.C. § 371, Mr. Elia was remanded pending sentencing and is currently detained at the Westchester County Department of Corrections. We respectfully move for Mr. Elia's release pending sentencing and outline our proposal below. We are informed by Mr. Scharf that the government has stated its opposition to Mr. Elia's release and suggested that any such application be brought to the Court's attention directly.

    As set forth below, the package includes the posting of family member's primary residences, several family members as signatories and an electronic monitoring component, which combination should allay any concerns that Mr. Elia is a risk of flight and ensure Mr. Elia's attendance at his sentencing and other court proceedings. Furthermore, to address the government's expressed concern that Mr. Elia would not be extraditable if he should flee the United States to Israel (notwithstanding the fact that Mr. Elia has surrendered his American and Israeli passports), we attach an opinion letter from Professor Kenneth Mann of the University of Tel-Aviv, concluding that Mr. Elia is in fact extraditable under the current extradition treaty between the United States and Israel. Furthermore, Mr. Elia will execute a waiver of his right to contest extradition and will take any other measures necessary to satisfy the court that he will abide by the conditions of release and appear at sentencing.

The Honorable Kenneth M. Karas
August 4, 2008
Page - 2 -

General Background

As the court may be aware, Mr. Elia has lived in the United States since 1973 and has surrendered both his American and Israeli passports to the government. After Mr. Elia graduated from Adelphi University, in Garden City, Long Island, in 1978, he opened and has continuously operated various stores and businesses in New York. Mr. Elia remains close with his ex-wife, Janice Elia, who lives in Harrison, New York with two of their three children; Jonathan (age 20) and Marissa (age 26). A third daughter, Jennifer (age 28) resides in New York City. Prior to trial, Mrs. Elia pledged her house to ensure Mr. Elia's attendance at all court proceedings. She remains willing to guarantee his attendance by again putting up her family's residence. Mr. Elia's three children all live and work in New York and all of whom are willing to act as suretors on their father's behalf.

Prior to trial in this matter, Mr. Elia invested several hundred-thousand dollars into his businesses in Westchester County, the viability of which are dependent upon Mr. Elia's ability to transition the daily operations of the business to his twenty year-old son, Jonathan Elia. Furthermore, survival of Mr. Elia's retail and other business operations would protect the employment of his approximately fifty employees and secure his ability to repay any taxes or penalties which the government contends are owing by him.

I.      The Bail Package

As mentioned above, in connection with Mr. Elia's pretrial release, Mrs. Janice Elia posted her home at 12 Sunset Lane, Harrison, New York 10528, where she lives with two of Mr. Elia's children. The home is valued in excess of $1 million and has an outstanding mortgage of approximately $422,000. See Exhibit A. Furthermore, Mr. Elia's daughter Jennifer Elia will post her apartment located at 337 West 20th Street, Apt. 1A, New York, New York 10011. The apartment was purchased for $690,000 in September 2007 and has an outstanding mortgage of approximately $387,000. See Exhibit B. As stated above, Mr. Elia's children Marissa, Jonathan, and Jennifer have all agreed to act as personal suretors, for an appropriate amount acceptable to your Honor, and all three have lived their entire lives in the United States of America.

Additionally, Mr. Elia will wear an electronic monitoring bracelet device to further allay the government's concern that Mr. Elia would flee. And, if necessary, in your Honor's judgment, Mr. Elia would submit to house arrest -- although we respectfully request that he be able to travel to his various stores and business meetings during his stores and businesses' regular business hours.

Finally, Mr. Elia will also enter into a written and sworn waiver of his right to challenge extradition. As we describe more fully below, Mr. Elia would, in any event, be unsuccessful in challenging extradition from Israel under the current U.S.-Israeli extradition treaty.

The Honorable Kenneth M. Karas
August 4, 2008
Page - 3 -

II.     The Importance of Release to Mr. Elia, his Family, and his Employees

Mr. Elia's various businesses employ over fifty individuals as documented by payroll records we attach. See Exhibit C. Mr. Elia is prepared to demonstrate to the government's satisfaction that the arrangements he is taking on behalf of his businesses and the contracts he seeks to enter into are for the sake of preserving those businesses. However, his inability to attend to his businesses raises the likelihood they will fail leaving him without assets to repay any judgments ordered against him.

These businesses include several stores selling sneakers: *Sneakermania*, a store operating under a 10-month leasehold at 90-15 Queens Boulevard in the Queens Mall; *Sneaker Outlet* at 190-88 Martine Avenue in White Plains, which is winding down operations; and *Xclusive Footwear* at 1F Xavier Drive Cross County Mall in Yonkers, New York opened this past weekend, on August 2, 2008. Also among Mr. Elia's businesses are *Last Touch*, a costume jewelry store at 4A Mallwalk in the Cross County Mall which is operating under a 6-month leasehold; *Center for Safety*, a driving school in White Plains which is under contact of sale; and, *Pizzamania*, a restaurant at 3 Xavier Drive Cross County Mall in Yonkers, New York which began operating on July 1, 2008.

Each of these businesses require Mr. Elia's supervision and guidance so that he can effectively transition the day-to-day operation to his son's stewardship. He stands to suffer enormous financial losses and his employees their jobs, should these business fail or suffer revenue shortfalls due to his inability to transition operations to his son. The *Center for Safety* was in the process of being sold when Mr. Elia was remanded. Although a contract of sale is in place, the agreement between the parties was that Mr. Elia would deliver the school free of tax liens, would train the new owner and would assist in bidding on a contact to provide driving education to several local high schools. Mr. Elia's detention makes it impossible to train the potential purchaser and although his accountant is working to remove the relatively small tax liens to clear the school for sale, Mr. Elia's detention poses a significant obstacle to communication with his accountant and the filing of necessary documents. The purchaser, through his attorney, has expressed doubt about whether, given Mr. Elia's incarceration, the sale can be consummated. In particular, the bid deadline for the high school contract has already passed although the potential purchaser advises that he is hopeful he could reopen the bid. Mr. Elia and his accountant are confident that if he is at liberty, the sale can be finalized and the interests of the *Center for Safety* and its employees can be secured.

Mr. Elia himself is the manager of these businesses and cannot attend to those companies from his current state of confinement. His restrictions on telephone calls, access to his accountants, business associates and counsel impede his ability to run and transition the businesses. Mr. Elia's two daughters are teachers who teach special needs and autistic students and are not in a position to assist in running the family businesses. Mr. Elia's son Jonathan has

The Honorable Kenneth M. Karas
August 4, 2008
Page - 4 -

agreed to temporarily take charge of the businesses during any period of time that may result from sentencing. However, because of Jonathan's youth and relative inexperience he cannot substitute for his father who has for several decades operated stores successfully and has a detailed working knowledge of the retail industry. Due to Mr. Elia's incarceration, *Xclusive Footwear* did not open as originally scheduled and therefore lost revenue and income. It bears repeating that Mr. Elia's flight, like his detention, would likely doom the businesses, mean the loss of his investments and cause financial devastation and instability for his three children and his ex-wife.

In addition to his desire to promote and maintain his businesses, Mr. Elia is now facing difficulty securing insurance coverage for *Pizzamania, Sneakermania, Xclusive Footwear,* and *Last Touch* because of his conviction. The lack of insurance coverage threatens his businesses and he must reorganize the structure of the businesses to satisfy the requirements of his insurers. See Exhibit D. However, his confinement makes it impossible for him to negotiate with insurers and to manage his company's interests in this critical regard.

The livelihood of Mr. Elia's over fifty current employees is dependent on his ability to run the stores and to negotiate contracts, address deficiencies, to manage inventories, to advertise products, and to meet payroll. In the recent case of United States *v.* Sabhnani, 529 F.Supp.2d 377 (E.D.N.Y. 2007), Judge Spatt ordered the post-conviction release of Mahender Sabhnani despite his conviction on charges relating to the forced labor of household servants at his Long Island home noting:

> Mahender is solely responsible for operating his business and has various employees who are dependent upon their jobs, salaries, and benefits. As such, the court finds that Mahender should be permitted time to arrange for the affairs of the business, as well as the family's financial affairs, for the benefit of the Sabhnanis' four children.

Sabhnani, 529 F.Supp.2d at 383.

Finally, although relatively brief, Mr. Elia's confinement has taken a physical and emotional toll on him. Mr. Elia is currently housed at the Westchester County Department of Correction where the many inmates on his block are being held on State Penal Law charges for violence or narcotics. Unfortunately, a former employee of *Sneakermania,* who was terminated by Mr. Elia, is currently housed at the facility and he has alerted the other inmates to Mr. Elia's background as a well-to-do business owner. Mr. Elia now finds himself the subject of harassment by inmates who taunt him repeatedly. Mr. Elia's concerns about whether these taunts will escalate have added considerable stress to the concerns he already has about his case, the operation of his businesses and providing for his family.

The Honorable Kenneth M. Karas
August 4, 2008
Page - 5 -

III.         Mr. Elia's Sentencing

      In the event, Mr. Elia's post-trial motions are denied and the case proceeds to sentencing, Mr. Elia intends to present a vigorous case detailing the government's overstatement of taxes owed. This loss figure which drives Mr. Elia's guidelines calculation is predicated on the double-counting of taxes owed by Mr. Elia's businesses as C-Corporations then again by Mr. Elia on his personal taxes as the owner of the C-Corporation. Essentially the government is faulting Mr. Elia for not paying taxes on the same income twice. Even if the court found that the government is technically correct in using this double-counting method of ascertaining tax loss, such an estimate would properly be reduced by the court for overstating the seriousness of the crime committed or for reflecting "overlapping enhancements." In United States v. Lauersen, 362 F.3d 160, 161 (2d Cir. 2004) the Second Circuit recognized that the "combined effect of substantially overlapping offense level adjustments and the increased extent of enhancement of the applicable sentencing range that occurs at the higher end of the sentencing table" may warrant a downward departure. See also United States v. Jackson, 362 F.3d 62 (2d Cir. 2003)(downward departure was available given cumulative effect of overlapping enhancements).

      Moreover, this proposed loss figure fails to account for evidence of substantial deductible expenditures by Mr. Elia's businesses that would decrease the tax loss. The evidence Mr. Elia's trial counsel and accountant have collected will establish that the loss figure is substantially lower than the government suggests. Notwithstanding the government's view that Mr. Elia is incorrect in his view of the size of the tax loss, Mr. Elia is confident that any sentence fashioned by the court will not be based on the government's calculation, making it unlikely that he will leave the jurisdiction, abandon his businesses, his family and leave them in financial ruin.

      In addition, our preliminary research indicates that factors not considered by the Sentencing Commission justify a downward departure including Mr. Elia's employment of approximately fifty employees, some of whom would not be employed absent their present positions, see United States v. Milikowski, 65 F.3d 4 (2d Cir. 1995) (finding that effect imprisonment would have on employees of companies in which dependant was a principal was "extraordinary circumstance" justifying downward departure as evidence showed defendant was the only person with knowledge, skill, experience, and relationships necessary to run companies which were in precarious financial condition). For all of these reasons, Mr. Elia has every incentive to remain under the court's supervision and to challenge the government's calculation of his sentence.

      Because the nature of the sentencing proceeding will involve a detailed review of Mr. Elia's inventory purchases for his businesses, his availability to meet with his attorneys, to review his records, and to search for documentation to support his position on the appropriate

The Honorable Kenneth M. Karas
August 4, 2008
Page - 6 -

calculation of loss is critical to the fairness of the fact finding at that proceeding. For this reason, the court should permit Mr. Elia to participate in his defense at this stage of the proceedings.

IV.  The Extradition Treaty with Israel

The government has noted its concern about Mr. Elia's ties to Israel as presenting a risk of flight. As stated above, Mr. Elia is an American citizen who has surrendered to the government both his American and Israeli passports. His children are American and all are employed in New York. Mr. Elia's businesses through which he has supported his family are all located in the United States with two new businesses (which he recently invested significant funds) have been launched within the past four weeks. He has twice with the permission of the court traveled to Arizona and Puerto Rico and returned without incident. There is no incentive for Mr. Elia to flee the United States and bankrupt his businesses and family members who will act as suretors for him. Even if there were such an incentive, Israel would provide no safe haven.

The United States and Israel have a valid and recently amended extradition agreement in force. See Protocol Amending Extradition Convention with Israel, Jul. 6, 2005, S. Treaty Doc. No. 109-3, 2005 WL 2427856. The Protocol was signed to strengthen and modernize the 1962 Convention on Extradition between the two countries. See Convention on Extradition between the Government of the United States of America and the Government of the State of Israel, U.S.-Isr., Dec. 10, 1962, 14 U.S.T. 1707.

Mr. Elia has obtained an opinion of Professor Kenneth Mann, a credentialed Israeli lawyer whose qualifications are outlined in his attached resume and opinion letter. See Exhibit E. Professor Mann has opined that the offense of conviction, namely - counts of income tax evasion pursuant to 26 U.S.C. §§ 7201, 7206(1); conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and also bail jumping in violation of 18 U.S.C. § 1073 are extraditable offenses under the Protocol.

Finally, Mr. Elia will agree to enter into a waiver of his right to contest extradition from Israel or any other country as a condition of his release to further dispel the government's concern that he is a flight risk. A copy of such a waiver is attached. See Exhibit F.

V.  The Applicable Standard for Release

The Bail Reform Act provides that a defendant should be released pending sentencing where "a judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any person or the community if released." 18 U.S.C. § 3143 (a)(1). Under this standard, for the reasons outlined above, we respectfully submit that Mr. Elia's proposed package more than adequately assures his presence at post-trial appearances and sentencing.

The Honorable Kenneth M. Karas
August 4, 2008
Page - 7 -

VI.     Conclusion

Based on the foregoing, Mr. Elia respectfully requests that he be granted release pending sentencing.

Respectfully,

Stuart P. Slotnick

Respectfully,

J.J. Scharf/sps

Jared J. Scharf

Enclosures
cc:     Cynthia Dunne, A.U.S.A. (via facsimile 914 993-1980 & First Class Mail)
        Seetha Ramachandran, A.U.S.A. (via facsimile 212 637-2937 & First Class Mail)
        Cynthia Monaco, Esq.