Oral Argument is Requested

# United States District Court
# For the Southern District of New York

UNITED STATES OF AMERICA,

- against -

ALBERTO WILLIAM VILAR and
GARY ALAN TANAKA,

*Defendants.*

## DEFENDANT ALBERTO VILAR'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S APPLICATION TO REMAND ALBERTO VILAR AND IN FURTHER SUPPORT OF HIS APPLICATION FOR BAIL PENDING SENTENCING

Docket No. 05-Cr-621 (RJS)
[Filed Electronically]

**Herald Price Fahringer (HF 3827)**
**Erica T. Dubno (ED 3099)**
Fahringer & Dubno
120 East 56th Street, Suite 1150
New York, New York 10022
(212) 319-5351

Counsel for Defendant Alberto Vilar

December 8, 2008

# Table of Contents

Table of Authorities .............................................................................. iii

Introduction ....................................................................................... 1

Procedural History ............................................................................. 3

ARGUMENT...................................................................................... 8

      Alberto Vilar Can be Trusted to Appear -- as
      He Has for More than Three Years -- and the
      Government's Allegations Regarding False
      Statements Should Not be Used to Deny Him
      Bail Pending Sentence ..................................................... 10

      There is No "Perjury" Exemption from the
      Right to Bail Pending Sentencing.................................... 12

      Alberto Vilar's Ties to New York Are
      Considerable ................................................................... 14

      "In My Dealings with Alberto He Has Been
      Genuine, Has Met his Commitments and Has
      Been Motivated by Doing the Right Thing for
      Young People" -- Itzhak Perlman ................................. 15

      Merely Because Someone Travels or Lived
      Abroad for Business Several Decades Ago
      Does Not Create a Risk of Flight .................................. 17

**The Government, Which Produced Proof at Trial and Argued that Alberto Vilar Had No Financial Resources, Should be Judicially Estopped from Changing its Position by Now Claiming that He Has Ample Resources to Flee** ............................................................................................ **18**

**District Courts Routinely Grant Bail Pending Sentencing and Appeal in White Collar Cases** ........................................... **19**

**Conclusion** ............................................................................................................. **22**

# Table of Authorities

**Cases**

Puerto Rico v. Branstad,
   483 U.S. 219, 107 S. Ct. 2802 (1987)...............................................................17

United States v. Abuhamra,
   389 F.3d 309 (2d Cir. 2004).....................................................................10, 12

United States v. Crisci,
   273 F.3d 235 (2d Cir. 2001)............................................................................12

United States v. Honeyman,
   470 F.2d 473 (9th Cir. 1972) .........................................................................10

United States v. Milstein,
   401 F.3d 53 (2d Cir. 2005)..............................................................................20

**Docketed Cases**

United States v. Floyd Arthur,
   No. 00 Cr. 448 (FB) (E.D.N.Y.) .....................................................................20

United States v. Douglas Brown,
   No. 95 Cr. 558 (AGS) (S.D.N.Y.) ...................................................................20

United States v. George Crisci,
   No. 00 Cr. 253 (BDP) (S.D.N.Y.)..............................................................12, 20

United States v. Yehezkel Elia,
   No. 07 Cr. 543 (KMK) (S.D.N.Y.) .................................................................21

United States v. Mazyar Gavidel,
   No. 01 Cr. 417 (TPG) (S.D.N.Y.)...................................................................21

United States v. Fredric Grae,
   No. 98 Cr. 566 (CBA) (E.D.N.Y.) ..................................................................20

United States v. Leonard Kalish,
   No. 05 Cr. 656 (RPP) (S.D.N.Y.) ...................................................................20

United States v. Sergei Kapirulja,
   No. 05 Cr. 1246 (RO) (S.D.N.Y.)....................................................................21

United States v. Angela Khorozian,
    No. 00 Cr. 393 (WHW) (D.N.J.)........................................................................20

United States v. Salvatore LoCascio,
    No. 03 Cr. 304 (CBA) (E.D.N.Y.) ...........................................................20, 21

United States v. J. Kevin Meneilly,
    No. 98 Cr. 371 (DH) (E.D.N.Y.) .............................................................20, 21

United States v. Daniel Ojeikere,
    No. 03 Cr. 451 (JGK) (S.D.N.Y.) ....................................................................21

United States v. Michael Stern,
    No. 05 Cr. 390 (SHS) (S.D.N.Y.) ...........................................................19, 20,

United States v. Edwin Tunick,
    No. 98 Cr. 1238 (SAS) (S.D.N.Y.) ..................................................................20

## Introduction

This Memorandum is filed in response to the government's submission seeking the remand of Alberto Vilar. We urge, most respectfully, that there is no basis to condemn Alberto Vilar to incarceration since his compliance with his significant bail conditions has been impeccable. As recently noted by this Court, "[w]e've had two defendants who have been on bail for three and a half years who have appeared every day for every conference on time, who have done everything that pretrial has directed them to do" (Tr. 11/26/08 at 5).

And, significantly, the U.S. Pretrial Services Officer, who has been supervising Mr. Vilar's release, specifically recommends that "bail be continued" with the following two changes: (1) the curfew be enforced by electronic monitoring; and (2) the cosigners to the bond submit affidavits confirming that they are aware of the Defendant's conviction and possible sentence, and continue to serve as cosigners. See Memorandum from Leo Barrios to Judge Richard Sullivan, dated November 29, 2008, at 4 (emphasis supplied).[1]

---

[1] For the convenience of the Court, a copy of the Pretrial Services Officer's Memorandum is attached as Exhibit A.

On November 26, 2008, the Court directed Alberto Vilar to be subject to electronic monitoring. Therefore, immediately after the court appearance, Mr. Vilar went to the Pretrial Services office at 500 Pearl Street to ensure that the <u>electronic monitoring was implemented that very day</u>. And, since that time, he has been under monitoring.

Moreover, our bail submission of November 25, 2008, included letters from at least two cosigners of Alberto Vilar's bond confirming their knowledge of the conviction and reaffirming that they are willing to continue to serve as cosigners.[2] Of note, counsel for Alberto Vilar previously obtained sworn affidavits from the bond cosigners indicating their continued faith in Mr. Vilar when this Court authorized him to travel to London to participate in depositions pursuant to Rule 15.[3]

We respectfully submit that the recommendation of Pretrial Services, which was made by the officer directly overseeing Alberto Vilar's release on bond and <u>reviewed by Supervising Pretrial Services Officer</u> Sharon Regis, is appropriate and should be considered by the Court in denying the government's application for remand and in continuing Alberto Vilar's release on bail pending sentencing.

_____

[2] <u>See</u> Letters of Walter Pfaeffle, dated November 23, 2008, and Elizabeth Stanford, dated November 22, 2008, which are attached hereto as Exhibits B and C.

[3] <u>See</u>, <u>e.g.</u>, Affidavits of Peter Berg, Kenneth Riffle, Mario Gaztambide, Jacqueline Gaztambide, Elizabeth Stanford, Walter Pfaeffle, and Alfred Heitkoenig (Docket Nos. 280, 281, 282, 283, 284, 285, 287).

**Procedural History**

To place this issue in proper context, a short historical review is helpful. Alberto Vilar, who is 68 years old and has no prior criminal history, was arrested on May 26, 2005. The following day, a bond hearing was held before Judge Harold Baer, of the Southern District of New York, who granted Mr. Vilar's release on a $10 million cash bond. The court also ordered Mr. Vilar to surrender his passport and directed that he be subjected to strict supervision by Pretrial Services, including electronic monitoring.

On June 3, 2005, Judge Baer modified Alberto Vilar's bail conditions such that the $10 million bond was converted into a Personal Recognizance Bond cosigned by a number of individuals and further secured by $4 million in cash and property.[4] Alberto Vilar still had to comply with strict pretrial supervision. During this period, his performance was exemplary.

On July 18, 2007, Judge Kenneth M. Karas issued an order eliminating the electronic monitoring and house arrest components of Alberto Vilar's pretrial release. See Docket Entry 204. The order further required Alberto Vilar to appear personally once a week at Pretrial Services and meet with his Pretrial Services Officer; call Pretrial Services once a day; abide by a curfew from 11 p.m. until 7 a.m.; and comply with all

---

[4] The government eventually obtained Confessions of Judgment that were filed with County Clerks securing the government's interests in property valued at $4 million.

other previously set conditions. In addition, Alberto Vilar's home is subject to random and unannounced searches by representatives of Pretrial Services. Id.

As recognized by Mr. Barrios, Alberto Vilar has "reported as directed both via telephone and in person since 2005" See Exhibit A at 3 (emphasis supplied).[5] Alberto Vilar's outstanding performance on bail was also witnessed by this Court, which saw Mr. Vilar return to 500 Pearl Street for pretrial proceedings, status conferences, jury selection, eight weeks of trial testimony, and four days of deliberations. See Tr. 11/26/08 at 5.[6]

On November 19, 2008, the jury found both Alberto Vilar and Gary Tanaka guilty. The Court then set a briefing schedule and directed the parties to return a week later for a hearing on the Defendants' application for continued release on bail pending sentencing.

---

[5] As further discussed below, Mr. Barrios acknowledges that "[m]any of the 'hung up alerts' and failed verifications" relating to the automated curfew confirmation system "can be attributed to the system." See Exhibit A at 3 (emphasis supplied).

[6] On November 18, 2008, during their third day of deliberations, the jurors indicated that they had reached a unanimous verdict as to one of the Defendants, and a partial verdict regarding the other. At that time, Herald Fahringer advised Alberto Vilar of his grave concern that the jurors had found him guilty of all 12 counts. And yet, even in the face of that utterly disquieting prospect, received directly from his lawyer, Alberto Vilar faithfully stayed for the remainder of the jury's deliberations. He then returned the next day while the jurors continued their deliberations.

On November 19th the government submitted a three-page letter, which did not cite to any authority, urging the "immediate remand of both defendants." <u>See</u> Gov't Letter, dated November 19, 2008, at 1. The Court denied the government's application for an immediate remand and instructed the parties to adhere to the schedule previously set for submissions. <u>See</u> Order dated November 20, 2008 (Docket No. 314). The government did not file any further submissions pursuant to the Court's briefing schedule.

On November 25, 2008, counsel for Alberto Vilar made a timely 20-page submission, which was supported by letters from numerous members of the community, detailing, through clear and convincing evidence, that Alberto Vilar poses no risk of flight or danger to the community.[7]

Significantly, <u>six days after the jury rendered its verdict, Alberto Vilar appeared</u> for his weekly interview with his Pretrial Services Officer. And, the next day, November 26, 2008, <u>Alberto Vilar returned to Court for the scheduled bail hearing</u>.

---

[7] In the very short time between the verdict and the submission, Walter Pfaeffle, L. Bradley Stanford, Elizabeth Ewing Stanford, Rose Marie Burkhardt Brout, Donald Brout, Winnie Klotz, Bernard Newman, and Jorge Bolanos all came forward with letters in support of Alberto Vilar.

At that time, the Court noted that "both defendants have a good track record up to today" and they "appeared every time they've been asked to appear" (Tr. 11/26/08 at 5). And, most significantly, the government <u>agreed</u> when the Court stressed that Alberto Vilar could point to "three and a half years, which is a rather long time of showing up religiously for court appearances and for Pretrial Services meetings and conferences" (Tr. 11/26/08 at 10-11). Certainly, this is an impressive tribute to Alberto Vilar's compliance with his bail conditions.

Then, addressing the hierarchy of extra assurances that have been implemented to further guarantee Alberto Vilar's faithful fulfillment of all his bail conditions, the Court stressed,

> [t]here's a $10 million bond for each defendant that's secured by significant assets and multiple cosigners" (Tr. 11/26/08 at 13).

At that time, Pretrial Officer Barrios submitted a Memorandum to the Court indicating that

> [t]hus far and in relation to each bail application granted by the Court, the defendant has complied with all of the terms .... He has also reported as directed and has followed all of the instructions provided by this office.

A copy of Mr. Barrios' submission, dated November 25, 2008, is attached as Exhibit D.

6

Pretrial Officer Barrios further stated that Alberto Vilar has "traveled outside of New York on three different occasions, and returned to the NY area as required." In addition, Alberto Vilar "has made all of his Court appearances." Id (emphasis supplied).

The Court then questioned Mr. Barrios concerning Mr. Vilar's compliance with his curfew obligations. One of the ways of ensuring compliance is through an automated telephonic calling system, which contacts a defendant's home during the curfew hours to verify his presence. Mr. Barrios noted that there were occasions when the automated telephone calls failed to get responses from both Alberto Vilar and Gary Tanaka in the middle of the night to confirm compliance with the curfew (Tr. 11/26/08 at 30, 35). Judge Sullivan then directed the Pretrial Officer to detail when the automated system failed to get nightly responses from the Defendants and to make a recommendation relating to whether bail should be continued. The government was also granted permission to submit further briefing.

On the evening of Wednesday, December 3, 2008, the government filed a 262-page submission in support of its application to disrupt the status quo and remand Alberto Vilar. The application was, in large measure, supported mostly by exhibits and arguments that attempted to call into question the veracity of statements that Mr. Vilar allegedly made before his release on bail back in 2005.

The Pretrial Officer also filed a submission which, significantly, concedes that the automated curfew system is fallible and suggests that "curfew checks be done using a much more reliable system." See Exhibit A at 3 (emphasis supplied). Mr. Barrios further recommended that Alberto Vilar's bail be continued subject to electronic monitoring and affidavits from the cosigners of the bond. See id at 4. As indicated, Alberto Vilar is currently on electronic monitoring and continues to comply with all aspects of his bail conditions.

## ARGUMENT

In a word, nothing speaks more powerfully to the continuation of Alberto Vilar's bail pending sentence than his impeccable compliance with bail conditions for three and a half years. Nevertheless, the government has now disappointingly claimed that the existing stringent bail conditions should be disrupted and that Mr. Vilar should be remanded to prison. Thus, despite rigorous compliance with his strict bail conditions, even after the jury returned its verdict, the prosecution endeavors to show that Alberto Vilar poses a risk of flight.

However, there is absolutely no evidence to support the government's claim. To the contrary, there is an abundance of clear and convincing evidence showing that Alberto Vilar will continue to comply with all bail conditions, as he has for more than three years.

Moreover, as further developed below, there is absolutely no truth to the prosecution's claim that "courts routinely remand white collar defendants following their conviction after trial" (Gov't Br. at 3). To the contrary, it is <u>customary</u> in both the Southern and the Eastern Districts of New York to <u>continue bail in most white-collar cases</u>.[8] And, this very Court identified a group of similarly high profile non-violent cases in which trial courts have maintained bail conditions pending sentencing or appeal. <u>See</u> Tr. 11/26/08 at 6-7.

Nothing in the government's brief meets or defeats the reality that, in cases of this nature, bail is typically granted. And, there is no reason to interrupt the <u>status quo</u> in this case because Alberto Vilar will continue to appear when directed because he has roots in the community and poses no risk of flight.

---

[8] <u>See</u>, <u>e.g.</u>, Barry Tarlow, "RICO Report", <u>The Champion</u>, 29-Nov Champion 68 (Nov. 2005) (noting the "unwritten policy" in white collar cases for granting bail and indicating that "Judges in the Southern District have for the most part been willing to grant bail pending appeal in some of the highest-profile white collar cases in decades").

**Alberto Vilar Can be Trusted to Appear -- as He Has for More than Three Years -- and the Government's Allegations Regarding False Statements Should Not be Used to Deny Him Bail Pending Sentence**

The government has burrowed back into Alberto Vilar's past in an effort to dig up allegations of false statements, claimed to have been made a long time ago, to use as a basis to deny him bail. However, because of the inherently hazardous nature of allegations of false statements, they are <u>not</u> included in the inventory of statutory factors used to deny a person bail under 18 U.S.C. § 3143.[9] Instead, the statute's only relevant considerations in white collar cases are a defendant's potential for harming the community or his risk of flight.

In fact, in an application for bail, courts traditionally rely on the history of a defendant's <u>conduct</u>, not his words. After all, actions do speak louder than words. <u>See</u> <u>United States v. Honeyman</u>, 470 F.2d 473, 475 (9th Cir. 1972) (reversing a district court's order denying bail to a defendant charged with perjury because even though the trial court "may have disbelieved Honeyman's assurances that he would appear as and

_____

[9] As indicated in our submission of November 25, 2008, which is incorporated by reference here, 18 U.S.C. § 3143(a), authorizes bail for defendants <u>who have been found guilty, but have not yet been sentenced</u>. Section 3143 "establishes a <u>right to liberty</u> that is not simply discretionary but <u>mandatory</u>: the judge 'shall order the release of the person [pending the imposition of sentence] in accordance with section 3142(b) or (c).'" <u>United States v. Abuhamra</u>, 389 F.3d 309, 319 (2d Cir. 2004) (emphasis supplied). Here, <u>there is no claim that Alberto Vilar is any danger to the community</u>. Thus, the only issue is whether or not this American citizen is a flight risk.

whenever required," in light of his "past record of appearances," this was not a basis for denying bail (emphasis supplied).

Here, significantly, virtually all of the allegedly false statements identified by the government are from years ago.[10] Nevertheless, despite questionable claims concerning each of the statements, Alberto Vilar continued "showing up religiously for court appearances and for Pretrial Services meetings and conferences" (Tr. 11/26/08 at 10-11).[11] Moreover, this faithful compliance continued after his conviction.

Obviously, there is nothing talismanic about a jury's verdict to suggest that Alberto Vilar will suddenly interrupt his conscientious compliance with his release requirements -- especially since the allegedly false utterances are claimed to have been made long before he was ever released on bail! And, none of these allegations undercut his striking record of bail performance, labeled by this Court as "religiously" fulfilled, for more than three years (Tr. 11/26/08 at 11).

---

[10] For example, Alberto Vilar's statements relating to his eligibility for state jury service were purportedly made back in 1999 and 2003 (Gov't Br. at 12), during a time when he was undergoing a series of spinal surgeries. Similarly, his alleged statements to the SEC and IRS were made back in 2004 and 2005 (Gov't Br. at 13). And, the claimed false statements to Bear Stearns were made in 2004 (Gov't Br. at 16-17). All of these statements occurred before Alberto Vilar was released on bail in June of 2005.

[11] Judge Karas properly concluded that Alberto Vilar should be granted bail pending trial and, as recognized by this Court, the Judge's "faith" in Mr. Vilar "seems to have been borne out" because he appeared for trial (Tr. 11/26/08 at 11).

### There is No "Perjury" Exemption from the Right to Bail Pending Sentencing

Moreover, under the government's suspect criterion, no person who has ever been charged with or convicted of perjury, or for making any false statement, would be eligible for bail. Instead, they would automatically be relegated to languishing in prison. This, we urge, would be intolerable in any civilized society in which an individual's liberty is of the highest priority.

Of note, in <u>United States v. George Crisci</u>, No. 00 Cr. 253 (S.D.N.Y.), Judge Barrington D. Parker granted bail pending sentencing and appeal to the defendant, who had been convicted of bank fraud and a count of <u>making seven false statements</u> to an FBI agent in violation of 18 U.S.C. § 1001. <u>See</u> <u>United States v. Crisci</u>, 273 F.3d 235 (2d Cir. 2001).

The legislature, in enacting § 3143(a) specifically enumerated <u>violent offenses and drug cases</u> as exceptions to the general rule that the judge "<u>shall</u> order the release of the person [pending the imposition of sentence]" where there is clear and convincing evidence of no risk of flight or harm to the community. <u>Abuhamra</u>, 389 F.3d at 319 (emphasis supplied). Conspicuously absent from the enumerated grounds for denying bail is any claim that a person has, in the past, made false statements or lacks veracity. Since Congress carefully specified those circumstances under which a person would be disqualified for bail, such as crimes of violence, it easily could have added false statements had the legislature believed them to be relevant. The fact that it didn't speaks volumes.

Moreover, Congress never intended that an application for <u>bail pending sentencing</u> should be treated by the government as an opportunity to relitigate aspects of the defendant's trial. This, of course, would be harrowing in its implications because it goes to the merits of the case that will be challenged on appeal.  Here, however, much of what the government argues in its application for a remand was the subject of Alberto Vilar's trial -- i.e., allegedly false statements made about the SBIC. <u>See</u>, <u>e.g.</u>, Gov't Br. at 13-14. If bail were to be denied based upon contested facts, which form the basis of the conviction, then that would, for all practical purposes, <u>effectively foreclose bail following any fraud conviction</u>. For, in almost all fraud cases, which today make up a major part of our federal prosecutions, the prosecutor could simply cite to the defendant's conviction as a basis for denying bail.

Finally, each of the allegedly false statements included in the government's submission are, in reality, merely a <u>distraction</u> from the ultimate issue: Whether or not Alberto Vilar poses any risk of flight. No purpose would be gained by debating the specific allegations in this forum at this time -- especially where many of them will be the subjects of Alberto Vilar's appeal! Thus, <u>without conceding the truth of any of the government's claims</u>, we urge that <u>none of these issues are relevant to a consideration under § 3143</u>.

**Alberto Vilar's Ties to New York Are Considerable**

Alberto Vilar was born in the United States; was educated in the United States; and is deeply committed to his country. Mr. Vilar also served with honor and distinction in the United States Army. This experience reflects his deep devotion to his country, a trait customarily considered in determining a person's reliability and character.

There is absolutely no basis to the government's claim that Alberto Vilar's ties to New York are "weak" (Gov't Br. at 10). To the contrary, as established by the compelling letters submitted with our November 25th presentation, Alberto Vilar's ties to the community are considerable. He has many friends who have come forward on his behalf. For example, Walter Pfaeffle, who posted his <u>two homes</u> in New York to guarantee Alberto Vilar's continued appearance in Court, emphasizes that Alberto is "an enthusiastic citizen of New York ... who is devoted to his community, his church and friends."

Similarly, L. Bradley Stanford, a retired Captain of the United States Navy, who currently works as a program analyst for the United States Navy's Office of Naval Research, indicates that Alberto Vilar has "always shown great loyalty and dedication to his friends." Donald and Rose Marie Brout, who live in New York City, also assert that "Alberto loves New York, and has many friends here." Winnie Klotz, the former official photographer for the Metropolitan Opera for 27 years, confirms Alberto Vilar's close ties to New York's cultural community. Ms. Klotz notes, quite poignantly, that Alberto is

"rooted here [in New York] with his church, his beloved cultural institutions and above all his very close personal ties" (emphasis supplied).

Alberto Vilar regularly attends Saint Thomas Church on Fifth Avenue in New York City. He also has deep ties and long associations with prominent local organizations such as the Hospital for Special Surgery, located East 70th Street in Manhattan; Columbia University Medical Center; New York University; Carnegie Hall; the Brooklyn Academy of Music; the Metropolitan Opera; the New York Philharmonic; and Iona College.[12]

> **"In My Dealings with Alberto He Has Been Genuine, Has Met his Commitments and Has Been Motivated by Doing the Right Thing for Young People" -- Itzhak Perlman**

And, since the original November submission, local support for Alberto Vilar continues to mount. For example, none other than <u>the most famous violinist in the world</u>, <u>Itzhak Perlman</u>, has unqualifiedly vouched for Alberto Vilar's work in the community. Itzhak Perlman asserts that he has known Alberto Vilar for approximately eight years, through their "mutual interest in the musical education of young people," and Mr. Perlman considers Alberto Vilar to be a "<u>good friend</u>." A copy of Itzhak Perlman's letter to the Court is attached as Exhibit E (emphasis supplied).

---

[12] These facts will be fully developed by the Probation Department in the preparation of the Presentence Report.

Itzhak Perlman further indicates that Alberto Vilar has been one of the "most devoted supporters" of the Perlman Music Program in New York for more than 15 years. And, as an illustration of Mr. Vilar's strong ties to the community, Mr. Perlman declares, "in my dealings with Alberto he has been genuine, has met his commitments and has been motivated by <u>doing the right thing for young people</u>" (emphasis supplied).

Anyone would be proud to have such supporters. But, here their relevance is especially important. Someone of Itzhak Perlman's stature and high standing in the community would not come forward and make such a statement without deeply believing that Alberto Vilar has and will abide by his bail commitments.

One also must not lose sight of the prominent individuals who came forward to cosign on Alberto Vilar's bond, or came to court during the trial to show their support for Mr. Vilar, or cherish long friendships with him. They include, but are no way limited to, Mario Gaztambide (<u>who has been Alberto Vilar's friend since fourth grade</u>), Jacqueline Gaztambide, Peter Lusk, Peter Berg, Alfred Heitkoenig, Kenneth Riffle, Elizabeth Stanford, and Walter Pfaeffle.

**Merely Because Someone Travels or Lived Abroad for Business Several Decades Ago Does Not Create a Risk of Flight**

In reality, there is no place for Alberto Vilar to go. It is absurd for the government to suggest that he would flee to England or anywhere else. First, as this Court recognized, Alberto Vilar could be "readily extradited" from the United Kingdom (Tr. 11/26/08 at 34). The same is true of Puerto Rico, which is a Commonwealth of the United States, and subject to the Extradition Act. See Puerto Rico v. Branstad, 483 U.S. 219, 107 S. Ct. 2802 (1987); U.S. Const. art. 4, § 2.

Moreover, Alberto Vilar has no passport and there is a block on his traveling out of the country! And, merely because he traveled to places such as Russia for cultural events, or used Kuwait as a base for several months a year while he worked to set up an investment office there more than 20 years ago, does not support a claim that he would ever flee his homeland and relocate to these foreign lands.

17

**The Government, Which Produced Proof at Trial and Argued that Alberto Vilar Had No Financial Resources, Should be <u>Judicially Estopped</u> from Changing its Position by Now Claiming that He Has Ample Resources to Flee**

Contrary to the contentions of the prosecution, Alberto Vilar simply does not have the necessary means to abscond. It is a matter of record, in this very case, that Mr. Vilar had to borrow the funds to pay his attorney. Moreover, during the trial, the prosecution established that Mr. Vilar was impoverished, desperate for money, and was about to lose his home through foreclosure![13] All this was done in an effort to support the government's theory at trial that Alberto Vilar was motivated by his distressed financial situation to commit the frauds alleged in the indictment.

The government should be precluded from suddenly switching positions by now taking a contrary position in order to defeat his bail application. The doctrine of <u>Judicial Estoppel</u> prevents a party from playing fast and loose with the Court by urging one point -- and then, at a later time, deliberately adopting a directly opposite or inconsistent position. However, that is precisely what is happening here.

---

[13] During summation AUSA Marc Litt urged that "Alberto Vilar was personally strapped for cash and Gary Tanaka knew it. Mr. Vilar overextended himself in numerous ways. He had made charitable pledges to lots of institutions. He pledged millions and millions of dollars to the Washington & Jefferson College from which he graduated, and he made pledges to the American Academy in Berlin. And he also had major personal expenses that he couldn't meet. ... And those emails show just how urgently Alberto Vilar needed cash." <u>See</u> Tr.5280-81.

### District Courts Routinely Grant Bail Pending Sentencing and Appeal in White Collar Cases

Finally, the judges of the Southern District of New York are joined by their colleagues in the Eastern District in recognizing the humane values and importance of allowing a defendant to remain at liberty pending sentencing and appeal. In addition to the long list of cases identified by this Court where the <u>status quo</u> was maintained following a conviction[14], we know from personal experience over more than 50 years of practice -- as well through as a survey taken of fellow members of the New York Council of Defense Lawyers -- that <u>bail is frequently continued in cases of this nature</u>, barring extreme circumstances where there is tangible evidence that a defendant is about to flee.

For example, Judge Sidney Stein granted bail pending sentencing and appeal to Michael Stern, who was a specialist on the floor of the New York Stock Exchange, following his conviction for conspiracy and securities fraud. <u>See</u> <u>United States v. Michael Stern</u>, No. 05 Cr. 390 (S.D.N.Y.). Similarly, Judge Patterson recently granted bail pending sentencing and appeal to a defendant convicted of conspiracy, wire fraud and

---

[14] Specifically, the Court referenced <u>Bernard Ebbers</u> whose conviction involved a loss of over a <u>billion dollars</u> in connection with the massive WorldCom fraud (Tr. 11/26/08 at 6). The Court also pointed to Philip Boake of Revco, who was granted bail pending sentencing despite being convicted of a fraud involving <u>$430 million</u>. John and Timothy Rigas of Adelphia, who were sentenced to 15 and 20 years respectively, were also granted bail. The Court also identified Sam Waksal from ImClone, Martha Stewart and Peter Bacanovic, Sanjay Kumar of Computer Associates, as well as Dennis Kozlowski and Mark Swartz (Tr. 11/26/08 at 6-7).

mail fraud, who faced a Guideline sentence of 168 months. <u>See</u> <u>United States v. Leonard</u> <u>Kalish</u>, No. 05 Cr. 656 (S.D.N.Y. Apr. 25, 2007). [15]

Judge Scheindlin continued bail to a defendant who was convicted of <u>21 counts</u> of conspiring to defraud a Medicare program, health care fraud, and making <u>false</u> <u>statements</u>. <u>United States v. Edwin Tunick</u>, No. 98 Cr. 1238 (SAS) (S.D.N.Y. Mar. 22, 2001). Judge Amon also granted bail pending sentencing and appeal to two defendants convicted of <u>25 counts of mail fraud and wire fraud</u>. <u>United States v. Fredric Grae and</u> <u>Thomas Rybicki</u>, No. 98 Cr. 566 (CBA) (E.D.N.Y. Jan. 27, 2000). Similarly, in <u>United</u> <u>States v. Angela Khorozian</u>, No. 00 Cr. 393 (WHW) (D.N.J.), the district court, in neighboring New Jersey, granted bail pending sentencing and appeal to a defendant who was convicted of conspiracy and bank fraud relating to allegations of <u>counterfeit checks</u> <u>totaling more than $20 million</u>.[16]

---

[15] In fact, this Court, we urge quite appropriately, granted co-Defendant Gary Tanaka's application for bail pending sentencing, even though he resides in London and his wife and children live abroad. Mr. Tanaka, who is also facing a 20-year statutory sentence, has substantial resources and was subject to the very same bail conditions as Alberto Vilar. <u>See</u> <u>United States v. Gary Tanaka</u>, No. 05 Cr. 621 (S.D.N.Y.) (RJS). If equal protection under the law is to be meaningful, then Alberto Vilar should be accorded the same consideration.

[16] Judge Dearie released Moshe Milstein, who was convicted of offenses relating to improper distribution of wholesale prescription drugs, on bail pending appeal. <u>See</u> <u>United</u> <u>States v. Milstein</u>, 401 F.3d 53, 61 (2d Cir. 2005). Judge Schwartz granted bail pending sentencing and appeal to a defendant who pled guilty to income tax evasion. <u>United</u> <u>States v. Douglas Brown</u>, No. 95 Cr. 558 (AGS) (S.D.N.Y. April 3, 1996). Judge Block continued bail pending appeal for a defendant who was convicted of alleged frauds and swindles. <u>United States v. Floyd Arthur</u>, No. 00 Cr. 448 (FB) (E.D.N.Y. July 27, 2001). Judge Hurley also granted bail pending appeal to a defendant who was convicted of

The cases relied upon by the government in opposition to bail pending sentence are readily distinguishable. In the majority of those cases the defendant had <u>significant ties to foreign countries</u>. For example, in <u>United States v. Yehezkel Elia</u>, No. 07 Cr. 543 (KMK) (S.D.N.Y.), the defendant had <u>dual citizenship</u> with Israel and apparently made bank deposits in Israel. Similarly, in <u>United States v. Sergei Kapirulja</u>, No. 05 Cr. 1246 (RO) (S.D.N.Y.), in addition to having been born in the Soviet Union, the defendant had a <u>child in Germany</u> to whom he was deeply attached. He also worked as a long distance trucker who traveled around the country and had few ties to New York.

Similarly, in <u>United States v. Daniel Ojeikere</u>, No. 03 Cr. 581 (JGK) (S.D.N.Y.), the defendant was convicted for fraud that directly related to his <u>claim that he was a Nigerian citizen</u>. And, in <u>United States v. Mazyar Gavidel</u>, No. 01 Cr. 417 (TPG) (S.D.N.Y.), the defendant was apparently an <u>Iranian national</u> who was convicted of <u>sending funds to Iran in violation of the United States trade embargo</u>.[17]

---

conspiring to defraud the United States. <u>United States v. J. Kevin Meneilly</u>, No. 98 Cr. 371 (DH) (E.D.N.Y. Sept. 6, 2000). <u>See</u> <u>also</u> <u>United States v. Salvatore LoCascio</u>, No. 03 Cr. 304 (E.D.N.Y.) (Judge Amon continued bail pending sentencing to a defendant who pled guilty to racketeering, money laundering and conspiracy). The cases assembled here are illustrative only and by no means exhaustive.

[17] Moreover, we urge that a number of the government's cases should be disregarded since there is absolutely no indication as to why the respective judges elected not to continue bail. Without an explanation from the court, there is no way to determine which, if any, of the facts noted by the government contributed to the court's decision to remand the defendants.

**Conclusion**

Under the Eighth Amendment, bail is basic to our system of criminal law. Thus, under the presiding spirit of this reigning ideal, and in light of all these circumstances, we most respectfully request the Court to maintain the status quo that has existed for more than three and a half years. It only remains to be said that Alberto Vilar is physically and financially depleted. He is a broken man. Nevertheless, all that he holds dear resides in New York. Simply put, this is his home and he would not flee.

For all these compelling reasons, as well as those previously addressed in our submissions of November 19th and November 25th, as well as at oral argument, the government's motion to remand Alberto Vilar should be denied; his bail should be continued pending sentencing and this Court should order such other relief as is just under all the circumstances, including a hearing on any contested issues.

Dated:       New York, New York
             December 8, 2008

                      Respectfully submitted,


             /s/   _____
                   Herald Price Fahringer (HF 3827)
                   Erica T. Dubno (ED 3099)
                   Fahringer & Dubno
                   120 East 56th Street, Suite 1150
                   New York, New York 10022
                   (212) 319-5351

                   Counsel for Alberto Vilar